Argued and submitted April 15, decision of Court of Appeals affirmed in part and reversed in part, and case remanded to Court of Appeals for further proceedings October 1, 2009

INTERSTATE ROOFING, INC.,
*Respondent on Review,*

*v.*

SPRINGVILLE CORPORATION,
fka Springville Associates, Inc.,
*Petitioner on Review,*

*and*

M&T REAL ESTATE, INC.,
*Defendant.*

(CC C04-3118CV; CA A135686; SC S056441)

218 P3d 113

James N. Westwood, Stoel Rives, LLP, Portland, argued the cause for petitioner on review. With him on the briefs was Jeffrey M. Batchelor, Markowitz, Herbold, Glade & Mehlhaf, PC.

Janet M. Schroer, Hoffman, Hart & Wagner, LLP, Portland, argued the cause for respondent on review. With her on the brief was Marjorie A. Speirs.

LINDER, J.

### LINDER, J.

This case requires us to determine whether certain formalities must be satisfied for a limited judgment to be final and appealable. Specifically, the issues are: (1) whether either a limited judgment document, or the record more generally, must reflect an express determination by the circuit court that there is "no just reason for delay"; and (2) whether a limited judgment document, to finally dispose of a claim, must use words of "adjudication." The Court of Appeals concluded that neither formality had to be satisfied for an appellate court to have jurisdiction over any claims that are, in fact, conclusively decided by a limited judgment. *Interstate Roofing, Inc. v. Springville Corp.*, 217 Or App 412, 418-20, 177 P3d 1, *modified on recons*, 220 Or App 671, 188 P3d 359, *modified on recons*, 224 Or App 94, 197 P3d 27 (2008). The Court of Appeals then determined that the limited judgment in this case conclusively resolved only two of the three claims addressed in the document; the court therefore dismissed plaintiff's appeal as to those resolved claims, because the notice of appeal was untimely as to them. *See* 217 Or App at 419-20 (concluding that limited judgment resolved breach of contract claim); 220 Or App at 678-80 (concluding that limited judgment also resolved lien foreclosure claim); *id.* at 675 n 2 (explaining why defendant could appeal claims not finally resolved by limited judgment). On review, we affirm in part and reverse in part.

The pertinent facts are largely procedural. In September 2004, plaintiff filed a civil action against defendant in circuit court. Plaintiff pleaded three claims for relief: foreclosure of a construction lien, breach of contract, and *quantum meruit*. Under its breach of contract claim, plaintiff also sought attorney fees. In its answer, defendant asserted counterclaims for breach of contract and for negligence. Defendant also sought an award of attorney fees under the terms of the contracts.

The case was bifurcated, with plaintiff's construction lien claim and defendant's counterclaims for breach of contract and negligence to be first tried to the court; any claims not resolved at trial, together with the remaining claims, would be later tried to a jury. Trial was held in July and

August 2006. After trial, both parties, apparently understanding that the trial court intended to resolve some but not all claims in the case, submitted proposed forms of limited judgment. The trial court did not adopt either of the proposed limited judgment documents; instead, the court entered its own document titled "Limited Judgment and Money Award." That document, which was entered on September 29, 2006, provided, in part:

"Having heard the testimony of the witnesses, and having reviewed their accompanying exhibits, and having heard the statements of counsel, and then being fully advised in the matter, the Court recited [its] ruling from the bench, including some findings of fact. In addition to all findings related on the record, the Court found, by a preponderance of the evidence, that:

"1. Plaintiff's Construction Lien was overstated and thus is invalid as a matter of law. As such, Defendant Springville is the Prevailing Party on that claim and is entitled to an Award of Attorney Fees and Costs to be determined by ORCP 68.

"2. As to Defendant Springville's Claim of Breach of Contract, Defendant is entitled to a Judgment against Plaintiff and a Money Award in the amount of $346,872.22. Prevailing Party Status has not yet been determined on this claim.

"3. The Court finds Defendant's Claims for Negligence, including Negligence *per se*[,] are inapplicable to the subject case. Specifically, the Court finds that, as a matter of law, a remedy in Tort is not available.

"Notwithstanding the remaining issues and claims in the case, the determination of prevailing party status, and awards of Attorney's Fees and Costs, the Court does find it in the interest of clarity and judicial economy to render said Limited Judgment and hereby Orders the following Money Award: [followed by a money award of $346,872.22].

"IT IS SO ORDERED."

Neither party appealed that document within 30 days after its entry.[1] Defendant collected the amount

---

[1] A party wishing to appeal a limited judgment must appeal within 30 days after its entry. ORS 19.205(1) specifically allows a limited judgment to be appealed.

awarded on its breach-of-contract counterclaim ($346,872.22), plus interest, and filed a satisfaction of the money award. The trial court later (in April 2007) entered a supplemental judgment awarding defendant attorney fees.

In November 2006, plaintiff moved to dismiss its remaining claims for breach of contract and *quantum meruit*, asserting that they were the only remaining unadjudicated claims in the case. Defendant objected on the theory that it was still entitled to a jury trial on its counterclaims. After a hearing, the trial court, which determined that defendant's counterclaims had been resolved by the limited judgment and that only plaintiff's claims remained in the case, granted plaintiff's motion to dismiss. On April 20, 2007, the trial court entered a general judgment dismissing plaintiff's claims for breach of contract and *quantum meruit*.

On May 16, 2007, within 30 days of entry of the general judgment, defendant filed a notice of appeal. The notice of appeal purported to appeal (among other things) the general judgment entered on April 20, 2007, and the limited judgment entered on September 29, 2006. Defendant acknowledged in the notice of appeal that the Court of Appeals' jurisdiction was in doubt.

Plaintiff moved to dismiss the appeal as to the limited judgment on the ground that the appeal was untimely in that regard. Defendant countered with a motion to determine jurisdiction, in which it argued that none of the three judgments was final and appealable.[2] As to the limited judgment, defendant specifically contended that it was not final because (1) the judgment itself contained no adjudicative wording,

Under ORS 19.255(1), the notice of appeal "must be served and filed within 30 days after the judgment appealed from is entered in the register." Timely filing of an appeal is jurisdictional. ORS 19.270(2)(b). A party who obtains a limited judgment cannot wait until the remaining claims in the case are resolved by a general judgment, because the limited judgment is not incorporated into the general judgment. *See* ORS 18.082(2)(a) (general judgment incorporates any prior written decision that "[i]s not a judgment").

[2] Defendant has never disputed that, if the document that the trial court entered as a "limited judgment" was final and appealable as to any of the claims in the case, defendant's notice of appeal was untimely as to those claims. Defendant has disputed only whether the limited judgment signed and entered by the trial court in fact conclusively determined one or more claims.

but, rather, it made only findings and announced a money award; and (2) the trial court had not made an express judicial determination of "no just reason for delay," which defendant argued is required by ORCP 67 B.[3]

The Court of Appeals rejected both of defendant's arguments as to the formalities that a trial court must satisfy to render an appealable limited judgment. *Interstate Roofing, Inc.*, 217 Or App at 418-21 (*"Interstate I"*). In particular, the court concluded that no statutory provision required a limited judgment to use the word "adjudged" or any variation of it. *Id.* at 418. The court also concluded that a limited judgment, pursuant to statutory provisions enacted in 2003, need not reflect the determination that there is no just reason for delay. *Id.* at 420 (citing ORS 18.052(1)).

The Court of Appeals then examined the limited judgment entered in this case to determine whether it actually had conclusively decided any claims in the case, in which event, defendant's appeal as to those claims would be untimely. The court considered the wording of the limited judgment—*e.g.*, referring to legal conclusions as "findings"—to be ambiguous, because it suggested the possibility that the trial court was merely reciting prior determinations with respect to all three claims mentioned in the limited judgment. *Id.* at 418-19. Still, the Court of Appeals concluded that the limited judgment finally resolved defendant's breach-of-contract counterclaim, reasoning that the money award on that claim demonstrated that the trial court intended the limited judgment to conclusively decide it. *Id.* at 419-20. As to that claim, the Court of Appeals concluded, the time to appeal had begun to run when it was entered. *Id.* at 421. Defendant had not filed a timely notice of appeal from the limited judgment. Accordingly, the Court of Appeals dismissed the appeal as to the breach-of-contract counterclaim. *Id.*; *see also id.* at 426 (noting that general judgment had

---

[3] ORCP 67 B provides, in part:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, * * * the court may render a limited judgment as to one or more but fewer than all of the claims or parties. A judge may render a limited judgment under this section only if the judge determines that there is no just reason for delay."

effect of dismissing unresolved lien foreclosure claim and negligence counterclaim).[4]

On plaintiff's petition, the Court of Appeals reconsidered whether plaintiff's lien foreclosure claim and defendant's negligence counterclaim also were conclusively decided by the limited judgment. *Interstate Roofing, Inc.*, 220 Or App 671, 188 P3d 359, *modified on recons*, 224 Or App 94, 197 P3d 27 (2008) (*"Interstate II"*). The court viewed the text of the limited judgment document as ambiguous in that regard. *Interstate II*, 220 Or App at 676. The court reasoned that, on the one hand, the text declared the lien foreclosure claim to be "invalid" and the negligence counterclaim to be "inapplicable," which suggested legal determinations. *Id.* at 675. On the other hand, neither determination "[was] the same as dismissing the claim or rendering judgment in favor of the party against whom the claim was asserted." *Id.* at 675-76.

The Court of Appeals concluded that it could resolve the ambiguity by considering the text of the limited judgment document itself in the context of the appellate record more generally. *Id.* at 676-77 (citing *Bennett v. Bennett*, 208 Or 524, 529, 302 P2d 1019 (1956)). That review led the Court of Appeals to conclude that the trial court had intended the limited judgment to dispose of the lien foreclosure claim. *Id.* at 679-80 (among other things, limited judgment stated that defendant was the prevailing party on lien foreclosure claim, and transcript excerpts indicated trial court believed it had resolved that claim). The Court of Appeals found nothing in the record that similarly suggested that the trial court intended conclusively to dispose of defendant's negligence counterclaim. *Id.* at 680. Consequently, the court modified its first decision and also dismissed the appeal as to the lien foreclosure claim. *See id.* at 679-80 (determining that limited judgment conclusively disposed of lien foreclosure claim).

■ On review, the parties renew the arguments that they made to the Court of Appeals. Their arguments particularly focus on whether, for a limited judgment to be

---

[4] The Court of Appeals also concluded that the general judgment was appealable and that the notice of appeal had been timely filed as to the claims that the general judgment resolved. 217 Or App at 421-26.

appealable, a trial court must make an express determination that there is no just reason for delay, and whether, to conclusively decide a claim, a limited judgment must resolve it using words of adjudication. Although they disagree on those points, the parties agree that, in all events, an appellate court should not look beyond the limited judgment document to determine which, if any, claims were resolved by the limited judgment. And, finally, the parties disagree on which claims, if any, were resolved by the limited judgment entered in this case.

The starting point for our analysis is the statutory scheme that governs entry of judgment and appellate court jurisdiction.[5] In 2003, the legislature comprehensively revised the statutes governing judgments and many of the provisions governing their appealability; many of those revisions now are codified in ORS chapter 18. *See* Or Laws 2003, ch 576 (enacting extensive statutory scheme regarding judgments). Of importance to this case, that statutory scheme now distinguishes—in a way that the former statutes did not—between the trial court's subjective decision resolving a claim and the way in which that decision must be reflected in a judgment document. In particular, ORS chapter 18 defines "judgment" as follows:

> " 'Judgment' means the concluding decision of a court on one or more requests for relief in one or more actions, as reflected in a judgment document."

ORS 18.005(8). "Judgment document," in turn, is also expressly defined:

> " 'Judgment document' means a writing in the form provided by ORS 18.038 that incorporates a court's judgment."

ORS 18.005(9).

---

[5] Defendant's starting point is different. Defendant begins with what it perceives to be Oregon's historic "aversion to" and policies disfavoring interlocutory appeals. The right to appeal, however, is wholly statutory. *See, e.g., State v. K. P.*, 324 Or 1, 4, 921 P2d 380 (1996) (right of appeal is conferred by statute; statutory scheme is starting point in analyzing whether document is appealable). The appropriate policies for this court's consideration are those embodied in the controlling statutes, however much they may favor or disfavor interlocutory appeals.

■ The statutory definition of "judgment" thus broadly consists of two distinct parts, one substantive and one formal. Substantively, the trial court must make a "concluding decision * * * on one or more requests for relief." ORS 18.005(8). Formally, the trial court must ensure that the concluding decision is reflected in a judgment document—*viz.*, a writing that meets certain requirements of form. *Id.*; *see* ORS 18.005(9) (judgment document must incorporate judgment and be in form prescribed by ORS 18.038); ORS 18.052(1) ("A judge rendering a judgment shall file * * * a judgment document that incorporates the judgment."). Generally, both the substantive and formal requirements must be met.[6] A purported judgment document must reflect the concluding decision of one or more claims, or it does not meet the statutory definition of "judgment document." Similarly, a trial court's concluding decision of a claim must be reflected in a judgment document, or it is not a legally efficacious judgment. Those distinctions are important for purposes of our analysis in this case, and we will return to them later in this opinion.[7]

Under the 2003 judgments legislation, there are three basic types of judgments: general judgments, limited judgments, and supplemental judgments. *See* ORS 18.005(7) (defining general judgment); ORS 18.005(13) (defining limited judgment); ORS 18.005(17) (defining supplemental judgment). This case concerns a limited judgment, which, as relevant here, is defined to mean "[a] judgment entered under ORCP 67 B[.]" Since 2003 (and at all times relevant to the

---

[6] There are two exceptions, both of which apply only to a general judgment. A general judgment is deemed to address claims to which it does not expressly refer, either by incorporating earlier written dispositions or by dismissing the unaddressed claims with prejudice. *See* ORS 18.082(2), (3) (so stating).

[7] ORS 18.038 lists certain other requirements of form that a judgment document must meet. *See* ORS 18.005(9) (definition of limited judgment incorporates ORS 18.038 by reference). They include (with limited exceptions) that the document must be titled as a judgment; it must be separate from any other document in the action; and it must identify the court rendering the judgment, the case itself, and the parties who prevailed and against whom judgment is given. *See* ORS 18.038(1), (3), and (4) (setting out those and other requirements of form). Also, specific types of judgments may be subject to their own formal requirements beyond those listed in ORS 18.038. *See, e.g.,* ORS 18.042 (listing requirements for judgment in civil action that contains money award); ORS 18.048 (listing requirements for judgment in criminal action that contains money award).

entry of the limited judgment in this case), ORCP 67 B has provided:

> "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may render a limited judgment as to one or more but fewer than all of the claims or parties. A judge may render a limited judgment under this section only if the judge determines that there is no just reason for delay."

*See* Or Laws 2003, ch 576, § 90 (amending prior version of ORCP 67 B). Parallel requirements are imposed by ORS 18.052, which was adopted in 2003 as part of the same act that amended ORCP 67 B. That statute provides, in part:

> "If the judgment is a limited judgment rendered under the provisions of ORCP 67 B, the judge must determine that there is no just reason for delay, but the judgment document need not reflect that determination if the title of the judgment document indicates that the judgment is a limited judgment."

ORS 18.052(1); *see* Or Laws 2003, ch 576, § 7 (enacting statute currently codified as ORS 18.052).

◼      Defendant's first argument relies on the requirement in ORCP 67 B and ORS 18.052(1) that the trial court judge, as a predicate for rendering a limited judgment, must determine that there is "no just reason for delay." Defendant acknowledges that, because the limited judgment at issue here is titled "limited judgment," the finding of no just reason for delay did not have to be recited in the judgment document itself. *See* ORS 18.052(1) (expressly so providing). Nevertheless, defendant contends, the record must somewhere reflect the trial court's express determination of no just reason for delay. Defendant asserts that the trial court never made any such determination on the record in this case; therefore, according to defendant, the limited judgment was a legal nullity.

Defendant is correct that both ORCP 67 B and ORS 18.052(1) require the trial court to determine that there is no just reason for delay. Textually, however, both are silent on whether the record must expressly reflect that determination. To determine whether those statutes impose such a

requirement, we evaluate their text in context, and then, to the extent we find it helpful, we consider the legislative history proffered by the parties. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (after considering text and context, court considers any pertinent legislative history, giving it appropriate weight). In this case, the context that we consider along with text includes the law as it existed before the 2003 amendment to ORCP 67 B and enactment of ORS 18.052. *See State ex rel Penn v. Norblad*, 323 Or 464, 468 n 1, 918 P2d 426 (1996) (prior enacted versions of a statute are part of context for purposes of statutory interpretation).

Before 2003, no statutory equivalent to ORS 18.052(1) existed. ORCP 67 B (2001), however, authorized a trial court to enter a judgment resolving fewer than all claims in an action. In its prior form, the rule provided that, when a trial court directed entry of a final judgment as to fewer than all claims or parties in an action, the trial court could do so "only upon an express determination whether there is no just reason for delay[.]"[8] The settled understanding of that requirement was that the express determination of no just reason for delay had to be in the judgment document itself.[9]

---

[8] ORCP 67 B (2001) provided:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

[9] *See, e.g., State ex rel Orbanco Real Estate Serv. v. Allen*, 301 Or 104, 116, 720 P2d 365 (1986) (in multiple party case involving more than one claim for relief, interim documents adjudicating some claims as to some parties did not contain express ORCP 67 B determination that "there is no just reason for delay"; in combination, however, those documents adjudicated all claims as to all parties and constituted a final judgment in the case); *Industrial Leasing Corp. v. Van Dyke*, 285 Or 375, 378-79, 591 P2d 352 (1979) (interpreting nearly identical text in the predecessor to ORCP 67 B (2001), *former* ORS 18.125 (1979); because judgments of involuntary nonsuit in favor of defendants did not contain an "express determination that there is no just reason for delay," they were not final judgments as to any of the claims or parties and appellate courts lacked jurisdiction over appeal).

And, although the trial court was required to determine that there was no just reason for delay using a nonexclusive list of factors, the trial court was not required to explain its reasons on the record and the determination itself was not subject to appellate review. *See May v. Josephine Memorial Hospital*, 297 Or 525, 531-32, 686 P2d 1015 (1984) (identifying factors and rejecting Court of Appeals' holding that appeal from limited judgment should be dismissed because trial court failed to explain reasons for determining no just reason for delay).

Thus, the law before 2003 was that ORCP 67 B (2001) required the trial court to make a determination of no just reason for delay. The trial court was not required to make that determination on the record or to explain the reasons for its determination in the record, and the determination itself was not reviewable on appeal. Instead, the trial court was required only to state summarily in the judgment document that it had determined that there was no just reason for delay.

The 2003 judgments legislation eliminated that one requirement that the judgment document expressly state the trial court's determination of no just reason for delay. And it did so in two ways. First, the 2003 amendment to ORCP 67 B specifically deleted the requirement of an "express determination" of no just reason for delay. Or Laws 2003, ch 576, § 90. Second, ORS 18.052(1), as enacted in 2003, affirmatively provided that a limited judgment document need not reflect the trial court's determination of no just reason for delay, as long as the document was titled as a limited judgment. *Id*. § 7. The 2003 legislation thus unequivocally evidences the legislature's intent to eliminate the one previously existing requirement that the record—through the express terms of the written judgment—reflect the determination of no just reason for delay. It is implausible to infer that the legislature deleted the requirement of an "express" determination of no just reason for delay in the judgment document, intending, by the deletion alone, to require an express determination elsewhere in the record.

The legislative history confirms that the legislature intended no such thing. The Oregon Law Commission submitted to the legislature a report that analyzed the provisions of House Bill 2646, which became Oregon Laws 2003,

chapter 576.[10] Regarding what was later codified as ORS 18.052, the report explained how that statute would affect ORCP 67 B's requirement of the "magic words" "no just reason for delay":

> "The most significant provision in this section is the last sentence of subsection (1) [ORS 18.052(1)]. As can been seen, this sentence eliminates the requirement of ORCP 67 B that 'magic words' appear in the judgment document to acquire an appealable judgment. Instead, the judge is charged with making the required determination (no just reason for delay) and *by the very act of signing a 'limited judgment' attests to having made that determination.*"

Testimony, House Judiciary Committee, HB 2646, Mar 25, 2003, Ex C, at 13 (Judgments/Enforcement of Judgments: Judgments Report (HB 2646)) (emphasis added) (hereafter OLC Judgments Report). Thus, as the text of the 2003 legislative changes itself indicates, the legislature in fact intended (1) to dispense with the requirement of an express trial court determination of no just reason for delay, and (2) to make the trial court's signature sufficient to manifest that determination, as long as the signed document bears the title "limited judgment." We therefore conclude that defendant's first argument is not well taken.

■     We turn to defendant's second argument regarding the formalities that a limited judgment must satisfy. Specifically, defendant argues that the limited judgment in this case failed to resolve any claim with finality, because the limited judgment document did not use the word "adjudged" (or some

---

[10] HB 2646 was sponsored by Representatives Lane Shetterly and Max Williams at the request of the Oregon Law Commission (OLC), which drafted the bill. The OLC is a legislatively created body "established to conduct a continuous substantive law revision program." ORS 173.315(1); *see also* ORS 173.315 - 173.357 (enabling legislation for OLC). The OLC's Judgments Report was submitted as an exhibit during the legislative hearings concerning HB 2646. Testimony, House Judiciary Committee, HB 2646, Mar 25, 2003, Ex C (Judgments/Enforcement of Judgments: Judgments Report (HB 2646)). In the absence of a contrary indication, we assume that the legislature accepted the OLC's explanations for its drafting choices, as we have done for other legislation that was accompanied by similar formal drafters' reports. *See, e.g.*, *State v. Woodley*, 306 Or 458, 462, 760 P2d 884 (1988) (unless contrary indication exists, court assumes that legislature accepted explanations of Criminal Law Revision Commission for its drafting choices). The OLC's Judgments Report thus provides us with an extensive record of the purposes and intentions behind HB 2646.

variant) in resolving any of the claims before the trial court. Instead, this limited judgment used the words "[o]rders" and "IT IS SO ORDERED[,]" which, defendant contends, is not enough.[11]

The pertinent statutes, however, do not impose any such formalistic requirement. The legislature has specified that, to render a legally effective "judgment," the trial court must arrive at a "concluding decision * * * on one or more requests for relief[.]" ORS 18.005(8). The concluding decision or decisions also must be "reflected" in a judgment document. *Id.* Neither the definition of "judgment" (*id.*) nor "judgment document" (ORS 18.005(9)) prescribes the words that must be used to "reflect[ ]" the trial court's concluding decision or decisions. Rather, the only "term of adjudication" that a judgment document statutorily must contain is the title itself— that is, the document must be titled as a judgment. *See* ORS 18.038(1) ("A judgment document must be plainly titled as a judgment."); ORS 18.052(1) (unless document is exempt, "judge shall ensure that the title of the judgment document indicates whether the judgment is a limited judgment, general judgment, or supplemental judgment"); ORS 18.245(1) (jurisdictional requirements for appeal include that "[t]he judgment document for the judgment must be plainly titled as a judgment as required by ORS 18.038(1)"). Based on that statutory scheme, we conclude that, as a matter of form, a judgment document that contains the statutorily prescribed title of "judgment" contains sufficient words of adjudication to be appealable; the legislature did not impose a formal requirement of additional, particular words of adjudication elsewhere in the text of a judgment.

---

[11] Factually, defendant's assertion is problematic. Although the limited judgment's text does not use the word "adjudged," it does use the word "judgment." Specifically, regarding defendant's breach-of-contract counterclaim, the limited judgment states that "Defendant *is entitled to a Judgment* against Plaintiff and a Money Award in the amount of $346,872.22." (Emphasis added.) Even accepting defendant's premise, the phrase "is entitled to a Judgment" surely would qualify as words of adjudication.

Similarly, although the limited judgment also uses the word "[o]rders," it does so to refer to the money award, which comes immediately after the declaration that the written document is a limited judgment: "[T]he Court does find it in the interest of clarity and judicial economy *to render said Limited Judgment* and hereby *Orders the following Money Award*[.]" (Emphases added.) Considered as a whole, that phrase, too, would seem to qualify as words of adjudication.

In that regard, we emphasize that we are rejecting a very narrow argument—*viz.*, the contention that a limited judgment, to be appealable, must contain in the body of the document particular words of adjudication, such as "adjudged." Although we reject that as a formal requirement for a "judgment document," the fact remains that, substantively, the judgment document must express a concluding decision on one or more claims in a case. *See* ORS 18.005(8) (definition of judgment specifically requires that it be "the concluding decision of a court on one or more requests for relief in one or more actions"). Words of adjudication undoubtedly may assist in conveying that the trial court has made a concluding decision on one or more of the claims before the court, and thus rendered judgment as to the decided claim or claims. But no statute prescribes the use of such words as the only way to express a concluding decision in a judgment document. If the terms used by a trial court suffice to convey the court's concluding decision or decisions, and if they are set forth in a document properly titled as a judgment, the statutory requirement that a "judgment" be reflected in a judgment document is satisfied.

■ The remaining issue, then, is whether the trial court in this action rendered a "concluding decision" on one or more of the claims and, if so, which ones. That issue subsumes one further issue: What may an appellate court examine to make that determination? Both plaintiff and defendant contend that the Court of Appeals erred on reconsideration in *Interstate II*, because it looked beyond the judgment document and more broadly examined the record to determine whether the foreclosure lien claim and the negligence counterclaim had been conclusively decided by the limited judgment. Although the Court of Appeals expressed misgivings, it concluded that it was required to do so by this court's decision in *Bennett*, 208 Or 524. *Interstate II*, 220 Or App at 676-77 (relying on *Bennett*); *see Bennett*, 208 Or at 528-32 (court examined record on appeal to determine whether ambiguous phrase in divorce decree was intended to award wife sum certain as alimony or as part of property division). As we will explain, we agree with the parties (although for reasons that differ in part from theirs) that the appellate courts may not resort to the record to resolve the meaning or intent of ambiguous provisions of a limited judgment, at least for purposes of

determining whether that judgment expresses a concluding decision on the claims at issue.

As we earlier explained, the statutory definition of judgment requires two basic components. Substantively, the trial court must have made a concluding decision as to one or more claims in the action; and formally, the trial court must enter a judgment document that reflects the concluding decision. *See* ORS 18.005(8) (definition of judgment); *see also* ORS 18.005(9) ("judgment document" must "incorporate[ ] a court's judgment"). Complementing that formal component, the trial court judge, by statute, is specifically directed to ensure that her or his concluding decision is reflected in the judgment document. *See* ORS 18.052(1) (judge rendering judgment "shall file * * * a judgment document that incorporates the judgment").[12] ORS 18.082 confirms the importance of that requirement. That statute provides, in part:

"(1)   Upon entry of a judgment, the judgment:

"(a)   Becomes the *exclusive statement* of the court's decision in the case and governs the rights and obligations of the parties that are subject to the judgment[.]"

(Emphasis added.)

Under those provisions, the judgment document, as opposed to the record more generally, must manifest the trial court's concluding decision on the claim or claims. The trial court's subjective intent to decide a claim is not relevant if the judgment document fails to expressly reflect that decision. Consequently, if a judgment document does not unambiguously manifest the concluding decision on a claim, an appellate court cannot address that defect by consulting the record to determine what the trial court subjectively intended.[13]

---

[12] Worth noting is that the distinction the legislature drew in that regard was a particularly deliberate one. *See* OLC Judgments Report at 9 (judgment is now "defined to have two distinct requirements. First a judgment has to be a 'concluding decision of a court on one or more claims in one or more actions.' Second, a 'judgment' must be 'reflected in a judgment document.' "); *id.* at 10 (existing law frequently confused judgment of court with document that reflected that judgment; drafters' goal was to correct problem by carefully delineating between decision of court in abstract and the writing that reflects that decision).

[13] A judgment document's failure to unambiguously manifest a concluding decision on a claim does not necessarily require automatic dismissal on appeal. As we noted previously, there are two situations in which a general judgment is deemed to have disposed of claims that it does not specifically address. *See* ORS

Assuming that *Bennett* permitted appellate courts to examine the record to determine the finality or appealability of an ambiguous judgment, it no longer reflects the correct state of the law, given the 2003 amendments to the statutes governing judgments.[14]

We therefore turn to the three claims discussed in the limited judgment. The Court of Appeals determined, first, that the limited judgment did conclusively determine the breach-of-contract counterclaim. *Interstate I*, 217 Or App at 419-20. It did so, moreover, based on the terms of the judgment document itself, rather than a review of the record more generally. Defendant contends that the Court of Appeals erred in that regard, because the limited judgment also stated that prevailing party status had not yet been determined on that claim.

■ We do not agree with defendant. No statute or rule requires a trial court to designate a prevailing party at the time it enters a judgment. To the contrary, the statutory scheme provides that attorney fees may be awarded by a supplemental judgment, thus implicitly contemplating that a prevailing party designation can be made after entry of a limited or general judgment. *See* ORCP 68 C(5)(b) (attorney fees may be awarded by supplemental judgment); ORS 18.005(17) (" 'Supplemental judgment' means a judgment that may be rendered after a general judgment pursuant to a legal authority."); ORS 20.077 (establishing process to determine prevailing party for purpose of attorney fee award). In this case, the limited judgment specifically stated that defendant was entitled to judgment on the breach-of-contract counterclaim, and it made a money award to defendant of a

18.082(2), (3) (identifying circumstances). In addition, the legislature has contemplated other solutions when a timely appealed judgment document contains an ambiguity fatal to its appealability. *See* ORS 19.270(4) (appellate court may give trial court leave to enter appealable judgment if trial court had intended to do so, but judgment from which appeal has been taken is defective in form).

[14] This court has never had occasion to determine whether its approach in *Bennett* of examining the record on appeal would extend to a judgment that is ambiguous for the purpose of determining its finality and appealability. The 2003 judgments legislation preempts any extension of *Bennett* to such a context. But nothing in our opinion in this case should be understood to prevent appellate courts from considering the record to resolve ambiguities in a judgment in other circumstances.

specified amount, which plainly reflected a final determination of the merits of that claim. The terms of the limited judgment themselves suggest that the trial court merely reserved the determination of prevailing party status and attorney fees on that finally resolved claim: The limited judgment was entered "[n]otwithstanding * * * the determination of prevailing party status, and awards of Attorney's Fees and Costs[.]"

Plaintiff, for its part, takes issue with the Court of Appeals' conclusion that the limited judgment did not, by its express terms, finally resolve the lien foreclosure claim or the negligence counterclaim.[15] We agree with plaintiff on both points.

Regarding the lien foreclosure claim, the limited judgment stated:

> "Plaintiff's Construction Lien was overstated and thus is invalid as a matter of law. As such, Defendant Springville is the Prevailing Party on that claim and is entitled to an Award of Attorney Fees and Costs to be determined by ORCP 68."

As we have explained, a properly titled judgment need not use particular words of adjudication in the text, as long as the text expresses a concluding decision on the claim. The text of the limited judgment here indicates that the trial court resolved the lien foreclosure claim in defendant's favor. Specifically, the judgment document declares that the lien was "invalid as a matter of law" and determines that the adverse party is the prevailing party for purposes of an attorney fee award. Although a limited judgment need not designate a prevailing party (as we determined for the breach-of-contract counterclaim), the actual designation of a prevailing party does indicate that the court made a concluding decision of the claim. *See* ORS 20.077(2) ("For the purposes of making an award of attorney fees on a claim, the prevailing party is the party who receives a favorable judgment * * * on the claim.").

---

[15] To clarify, plaintiff's disagreement with the Court of Appeals' resolution of the lien foreclosure claim is not with the court's conclusion, but rather with the court's view that the limited judgment was ambiguous as to that claim and that the ambiguity should be resolved by resort to the record.

We therefore conclude that the limited judgment reflected a concluding decision as to plaintiff's lien foreclosure claim.

Regarding the negligence counterclaim, the limited judgment stated:

> "The Court finds Defendant's Claims for Negligence, including Negligence *per se*[,] are inapplicable to the subject case. Specifically, the Court finds that, as a matter of law, a remedy in Tort is not available."

Fairly read, that text represents a concluding decision on the negligence counterclaim.

Three aspects of the text of the limited judgment lead us to that conclusion. First, the express text addressing that claim itself seems to foreclose any further consideration of it by the trial court: "as a matter of law, a remedy in Tort is not available."

Second, the negligence counterclaim is numbered sequentially ("3.") after the first two claims that the limited judgment decides. Then, immediately following the numbered declarations of the resolution of the three claims, the document, in a new, unnumbered paragraph, declares: "Notwithstanding the *remaining issues and claims in the case*," the court finds it appropriate to render a limited judgment. That juxtaposition, too, reflects that, although there are other remaining issues and claims in the case, the claims discussed in the previously enumerated paragraphs, including the negligence counterclaim, are not among them.

Finally, and significantly, the document is titled "limited judgment." Both legally and as a practical matter, it is a document in which a trial court, by signing it, reflected its intent to conclusively resolve some but not all of the claims in a particular action. We believe that, in general, the significance of signing such a document is not lost on trial court judges. But that is especially so in a case such as this one, where both parties submitted forms of "limited judgment" to the trial court, and the trial court, rather than sign either proposed judgment, took up the task itself and drafted its own limited judgment. The document's distinctive title, when combined with the express terms on which the negligence

claim was disposed, followed by the reference to the "remaining issues and claims in the case," leave us with no doubt that the limited judgment document reflected the trial court's "concluding decision" on the negligence counterclaim, as well as the breach-of-contract counterclaim and the lien foreclosure claim.[16]

Because the limited judgment finally resolved all three of the claims that it addressed, and because defendant did not timely appeal the limited judgment, the Court of Appeals should have granted plaintiff's motion to dismiss the appeal as to those claims. The Court of Appeals did dismiss the appeal of the lien foreclosure claim and the breach-of-contract counterclaim, and we affirm those parts of its decision. The Court of Appeals erred, however, when it concluded that the limited judgment did not conclusively decide the negligence claim. To that extent, we reverse its decision denying plaintiff's motion to dismiss. We remand to the Court of Appeals with instructions to dismiss the appeal from the limited judgment and for further proceedings as to any remaining claims properly before the court.[17]

In summary: For the reasons that we have explained, neither ORCP 67 B nor ORS 18.052(1) requires the record to reflect the trial court's determination that there is no just reason for delay in rendering a limited judgment. Also, a limited judgment is not rendered jurisdictionally defective merely because the text omits the word "adjudged" or other particular words of adjudication in resolving one or more claims. In determining whether the trial court made a concluding decision on one or more claims in an action, an

---

[16] We acknowledge that the limited judgment precedes its discussion of the three claims with confusing and inappropriate text—for example, describing conclusions of law as findings of fact. *See Interstate I,* 217 Or App at 418-19 (identifying various problems). Yet when we consider the limited judgment as a whole—and in light of its designation as a limited judgment—we cannot agree with the Court of Appeals that the document leaves significant doubt that the trial court had rendered a concluding decision on all three claims.

[17] The Court of Appeals determined that the appeal could proceed from the general judgment and the supplemental judgment, after giving the trial court leave under ORS 19.270(4) to vacate and renter the supplemental judgment. *Interstate I,* 217 Or App at 427. Before this court, the parties have not raised any issue with respect to that aspect of the Court of Appeals' disposition of the case.

appellate court is limited to the terms of the limited judgment document itself; it should not consult the record to resolve uncertainty about the trial court's subjective intent regarding the disposition of claims. Finally, the limited judgment at issue in this case contained a concluding decision on all three of the claims that it addressed.

The decision of the Court of Appeals is affirmed in part and reversed in part, and the case is remanded to the Court of Appeals for further proceedings.